FILED
2009 Mar-30 PM 12:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **VICCI A. DELIBERTO-JOHNSTON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | Case. No. 3:08-CV-0138-RDP |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

### MEMORANDUM OPINION

Plaintiff Vicci A. Deliberto-Johnston brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability, Disability Income Benefits ("DIB") under Title II, and Supplemental Security Income ("SSI") benefits under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.      Procedural History**

Plaintiff filed her applications for disability, DIB, and SSI on March 5, 2004 alleging she was disabled due to a previous heart attack, diabetes, and knee problems. (Tr. 18, 54-56, 64). Plaintiff's applications were denied on June 10, 2004. (Tr. 49-52). Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") on August 14, 2004. (Tr. 53). Plaintiff's request was granted and ALJ George W. Reyes held a video hearing on April 24, 2006. (Tr. 35-39, 773-832). In his January 19, 2007 decision, the ALJ determined that Plaintiff was under a disability of insulin

dependent diabetes mellitus, poorly controlled secondary to poor (or nonexistent) compliance with treatment recommendations, and morbid obesity with a Body Mass Index of 42.6 to 45.7.  Further, the ALJ further determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P.  (Tr. 28).  Although the ALJ found that Plaintiff was under a disability, he also found that Plaintiff's substance use disorder was a contributing factor material to the determination of disability, and therefore, she was not disabled within the meaning of the Act.  (Tr. 15-31).

Plaintiff requested review of the ALJ's decision on June 21, 2007.  (Tr. 12-13).  The Appeals Council denied Plaintiff's request for review on November 28, 2007.  (Tr. 6-8).  The ALJ's decision then became the final decision of the Commissioner, and therefore, a proper subject for this court's review.

## II.     Personal and Medical History

Plaintiff was born on July 7, 1971 and has completed two years of college.  (Tr. 60-70).  She has held past employment as a cashier, production worker, and stocker.  (Tr. 65).  Plaintiff alleges that she has been unable to engage in substantial gainful activity since January 1, 2003, when she became unable to work due to being "sick so much that [she] miss[ed] work a lot."  (Tr. 49, 60-70).

Plaintiff was diagnosed with diabetes sometime prior to 1999.  Plaintiff has been prescribed and received medication to control her diabetes.  Plaintiff's primary place of treatment has been the emergency room.  While under direct medical care in the hospital Plaintiff's diabetes has been maintained at acceptable levels. Notes indicate that when Plaintiff is not in the hospital she is non-compliant in her medical treatment.  (*See* Tr. 23).

Plaintiff was seen at the North Oaks Medical Center emergency room on September 16, 2002 with complaints of low blood sugar. (Tr. 343-51). Plaintiff was diagnosed was hypoglycemia. (Tr. 350). Emergency room notes state that, "[p]atient insists on leaving against medical advice." (Tr. 346). Plaintiff returned to the North Oaks emergency room on September 20, 2002 with complaints of nose swelling. (Tr. 333-42). Notes from that visit recognize Plaintiff's diabetic condition, but discharged Plaintiff with medication for a small area on her nose. (Tr. 334). Notes also indicate that Plaintiff was in no distress. (*Id.*).

Plaintiff went to the North Oaks emergency room again on October 13, 2002 with a complaint of low blood sugar. (Tr. 324-32). Notes from that visit indicate no distress, no pain, and walking without difficulty. (Tr. 325). Plaintiff refused to be weighed or state her weight at the time of the examination. (*Id.*). Plaintiff was diagnosed with diabetes mellitus and discharged to her home with a friend. (Tr. 327, 331).

Plaintiff was seen in the North Oaks emergency room on October 21, 2002, with complaints of pain in her neck and upper back after she was involved in an automobile accident. (Tr. 315-23). Plaintiff was diagnosed with a strain and given a prescription for pain medication. (Tr. 322).

Plaintiff presented to the North Oaks emergency room again on October 29, 2002 with complaints of knee pain after slipping and falling. (Tr. 305-14). X-rays were taken and reviewed with no evidence of a fracture, dislocation, or foreign body. (Tr. 314). Plaintiff's diagnosis was a knee contusion and she was released with a prescription for pain medication. (Tr. 312).

Plaintiff was treated at the North Oaks emergency room on January 21, 2003 for low blood sugar. (Tr. 303). Plaintiff returned to the North Oaks emergency room on January 26, 2003, this time complaining of back pain and pain during urination. (Tr. 294). Plaintiff was diagnosed with

a lumbar strain and released with a prescription for pain medication. (Tr. 300).

Plaintiff was seen several times at the North Oaks emergency room during February 2003 for low blood sugar and complaints that she did not feel good. Plaintiff was repeatedly diagnosed with diabetes and discharged home. (*See* Tr. 263-91).

In May 2003 Plaintiff was treated at the North Oaks emergency room for reported back pain. (Tr. 253-62). The diagnosis was low back pain and Plaintiff was released with a prescription for pain medication. (Tr. 259). Plaintiff was again seen in May at North Oaks emergency room for a laceration on her left arm. (Tr. 244). Plaintiff returned for a follow-up examination after she bumped her left arm. (Tr. 219). Plaintiff was discharged with a prescription for pain medication. (*Id.*). In the Fall of 2003, Plaintiff was seen at North Oaks emergency room for irregular insulin levels. (Tr. 176-205).

On February 3, 2004, Plaintiff was treated at the North Oaks emergency room with diabetic complications. (Tr. 153). Plaintiff was medicated while in the hospital and then released with a prescription for Glucophage. (Tr. 156). Plaintiff was treated at the North Oaks emergency room again in February 2004 after an altercation with her husband. (Tr. 106-52). Plaintiff's diagnosis was facial contusions and polysubstance abuse. (Tr. 133). CT scans were "unremarkable." (*Id.*). A urine screen test was positive for THC and benzodiazepines. (*Id.*).

Plaintiff was seen by Dr. George Anthon, a chiropractor, on March 23, 2004. (Tr. 394-401). Plaintiff alleged that she had been in an automobile accident involving an 18-wheeler and wanted to try chiropractic care treatment.[1] (Tr. 396). Plaintiff was diagnosed with a cervical, thoracic and

---

[1] The court notes that there are no records from the North Oaks emergency room referencing an automobile accident on March 14, 2004.

lumbar sprain. (Tr. 400). Plaintiff's prescribed treatment was physical therapy for four weeks. (*Id.*).

Plaintiff was treated at the North Oaks emergency room on May 2, 2004, again alleging an automobile accident with an 18-wheeler. (Tr. 408-18). Plaintiff claimed she hit the back of an 18-wheeler, but the driver of the 18-wheeler denied there was an accident. (Tr. 409). EMTs reported to the emergency room that witnesses at the scene saw Plaintiff stop her car in the middle of the road, but there was no collision with any truck. (Tr. 411). While in the emergency room Plaintiff was out of bed, walking around talking on the phone, and appeared to be in no distress. (*Id.*). Plaintiff was told to take Motrin or Aleve as needed for pain. (*Id.*).

On May 24, 2004 Plaintiff was evaluated by Dr. Brian Murphy, a psychologist, to consider Plaintiff's functional competencies. (Tr. 438). Dr. Murphy noted that Plaintiff looked delirious and she had a positive drug screen for anxiolytics and THC. (*Id.*). Dr. Murphy also noted that Plaintiff was pleasant and groomed, but that she "entered the office looking to be rather dazed and as someone who might well be under the influence." (*Id.*). Dr. Murphy found Plaintiff to be coy and evasive, was contradictory in answering questions, and "simply did not seem to be credible." (Tr. 438-39). Dr. Murphy also noted that Plaintiff was acting out symptoms that she thought would convince him that she was emotionally disturbed. (Tr. 438). Dr. Murphy concluded that Plaintiff had a GAF level of 75. (Tr. 441).

On June 4, 2004, State Agency psychologist Jeanne George, Ph.D., reviewed Plaintiff's file and was asked to offer an opinion regarding Plaintiff's mental impairment, but stated that there was insufficient evidence to make a conclusion. (Tr. 30, 444).

Plaintiff was seen at the Lallie Kemp Medical Center on July 11, 2004 for a check-up. (Tr. 426). Plaintiff was provided a prescription for Glucophage. (Tr. 427).

Plaintiff returned to the North Oaks emergency room on July 22, 2004 alleging back pain. (Tr. 403). Notes state that Plaintiff said, "I do not want to see Dr. Gaines, so I will leave." (Tr. 404). Plaintiff left the emergency room without treatment. (*Id.*).

Plaintiff was seen at the Lallie Kemp Medical Center on August 19, 2004 with complaints that she did not feel good. (Tr. 420). Plaintiff stated she had been out of medication for two weeks. (*Id.*). Plaintiff's diagnosis was hyperglycemia. (Tr. 422). Plaintiff was provided medication for diabetes. (Tr. 423).

On October 26, 2004, Plaintiff was seen at the North Oaks emergency room citing back pain after she strained herself pulling on her spouse, and a blood sugar level over 400. Plaintiff was given fluid hydration IV Humulin, as well as subcutaneous Humulin, and Torado, Demerol and Phenergan IV for pain control. During the course of the evaluation, Plaintiff removed the IV herself and stated she had transportation home. Medical notes further state Plaintiff was demanding and uncooperative. (Tr. 684-88).

The next day on October 27, 2004, Plaintiff presented with back pain to the North Oaks emergency room. Plaintiff denied any drug use, but the notes state that "I personally know this patient and know she has a chronic drug use problem." The impression on Plaintiff's medical records is "chronic drug abuse." Plaintiff was discharged and told to fill the prescription she received the day before when in the emergency room. (*See* Tr. 677).

Plaintiff was treated at the North Oaks emergency room on November 12, 2004 with complaints of a seizure and loss of consciousness. Notes state that there was no history of prior seizures. Plaintiff initially refused treatment, but then consented. Plaintiff informed the doctor that she would not take any medications. Plaintiff also tested positive for THC. (*See* Tr. 662).

On December 26, 2004, Plaintiff was seen at the North Oaks emergency room with complaints of chest pain. Notes state that Plaintiff is well-known to the emergency department with a history of pain medicine problems. Plaintiff underwent an EKG and chest X-ray which showed no acute findings. Plaintiff was given Valium and discharged. (*See* Tr. 651).

Plaintiff presented to the North Oaks emergency room again the next day on December 27, 2004, claiming that she had tripped in a pot hole and twisted her left ankle and right knee. (Tr. 642). When asked about her pain level, Plaintiff stated it was a 10 out of 10. The medical record note from this visit makes mention that it appeared Plaintiff's pain level was a 1 out of 10. (*Id.*). The medical record note further mentions that Plaintiff was made aware of the potential waiting time, and when her name was called in the waiting room, there was no answer. (*Id.*).

Plaintiff returned to the North Oaks emergency room the next morning with continued complaints of pain in her left ankle. Plaintiff's left ankle revealed mild, limited range of motion secondary to pain, no bruising was noted, and no definite swelling. An x-ray revealed no fracture or dislocation. (Tr. 635). Although Plaintiff stated she was unable to use crutches and she falls, it was noted that "she did walk on it while in the emergency room with only a minimal limp." Plaintiff's ankle was wrapped with an Ace bandage and she was discharged with printed instructions, verbalizing her understanding and ability to comply with the instructions. (Tr. 634). Plaintiff was back at the North Oaks emergency room that evening having removed the Ace wrap stating "it was too tight" and hurt worse. She denied any new injury, only requesting to be seen in urgent care. (Tr. 623). Plaintiff claimed she could not fill the prescription given her because it cost too much. (*Id.*).

Plaintiff was evaluated by the Staff Psychiatrist for Rosenbloom Mental Health Center. The January 3, 2005 evaluation letter found that Plaintiff did not meet treatment criteria, but that she had

7

a diagnosis of depression and situational stress. (Tr. 428, 459). Recommended treatment was antidepressants and counseling. (Tr. 428). Plaintiff was provided information on an indigent medication program if she was unable to afford the prescribed medication.[2] (*Id.*). Plaintiff repeatedly refused recommended treatment. (Tr. 459). Plaintiff refused antidepressants, counseling and stress management training. (*Id.*). Instead, Plaintiff stated that the only medications she would take were Xanax or Valium. (*Id.*).

On January 26, 2005, the North Oaks emergency room diagnosed Plaintiff with a seizure disorder. (Tr. 431). Plaintiff was given a prescription for Dilantin, instructions on seizure disorders, and other instructions not to drive for 3-4 days and seek follow up at Lallie Kemp Primary Clinic. (Tr. 434).

Plaintiff was seen in the North Oaks emergency room on May 1, 2005 alleging dizziness and trembling. (Tr. 573). The diagnosis was diabetes mellitus and seizure. (*Id.*). When questioned, Plaintiff reported she was at the hospital because of an abscess on her forearm. (Tr. 578). Plaintiff also reported that she had a prescription for Dilantin, had plenty of it at home, but did not take it. (Tr. 578-80). Plaintiff was discharged with instructions and a prescription. (Tr. 577).

Plaintiff was treated at the North Oaks emergency room on July 19, 2005 for chest pain and a high blood sugar level. (Tr. 546). The treatment notes on that form indicate that Plaintiff was being arrested for trying to buy crack for her husband when she "suddenly" developed chest pains and fell to the ground. (Tr. 546). While in the emergency room, Plaintiff would not remain in her

---

[2]The court notes that this program is an issue raised by Plaintiff. There is no evidence that Plaintiff attempted to utilize this program or apply for any program to assist in providing medical care and prescription costs. In fact, Plaintiff recognized and argued, "There is no evidence that she did not try to enter this program . . . ." (Doc. #9).

bed or room and left the emergency room ambulatory with her husband. (Tr. 547).

Plaintiff was seen in the North Oaks emergency room on August 25, 2005 with flu like symptoms and a high blood sugar level. (Tr. 530). Plaintiff was diagnosed with a mildly elevated glucose level, headache, UTI, and a seizure disorder. (Tr. 536). Plaintiff was discharged with no pain and a prescription. (Tr. 532).

There are medical records that are from the time period after the video hearing was held before the ALJ. However, these records do not relate to any condition not discussed by the ALJ. One of the last records was when Plaintiff visited the North Oaks emergency room on July 16, 2006 requesting Xanax and Valium. (Tr. 517).

**III.    ALJ Decision**

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether the claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not

disabled at any step in this procedure, the Commissioner will provide no further review of the claim. If the Commissioner finds that the claimant is disabled and there is medical evidence of a substance use disorder, the Commissioner must determine if the substance use disorder is a factor material to the determination of disability. The Commissioner determines whether the claimant's mental and/or physical limitations would remain if the claimant stopped the substance use. If it is determined that the remaining limitations would not be disabling, the substance use disorder is a contributing factor and the claimant is not disabled.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.* Pursuant to the Contract with America Advancement Act of 1996, 42 U.S.C. § 423(d)(2)(c) (1997), "the claimant bears the burden of proving that [alcohol or substance abuse] is not a contributing factor material to the disability determination." *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001).

The ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2003, her alleged onset date of disability. (Tr. 21). The ALJ determined that Plaintiff has several impairments that are not severe: heart impairment, vision impairment, and musculoskeletal impairment. (Tr. 21). However, the ALJ determined that Plaintiff has impairments that are severe under 20 C.F.R. 404.1520(c) and 416.920(c) which include insulin diabetes mellitus, morbid obesity, seizure disorder, mental impairments, and polysubstance abuse and dependence. (Tr. 21-22). The

ALJ determined that Plaintiff's impairments, including the substance use disorder, meet 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 22).

The ALJ noted that the records established that Plaintiff was referred to as a "non-compliant diabetic" and was known to have a drug abuse problem.  (Tr. 23).  When Plaintiff was regularly administered her medication, her glucose levels were easily maintained.  (*Id.*).  The ALJ found that when medications were taken and a proper diet was followed, Plaintiff's blood glucose levels could be maintained within normal limits.  (Tr. 23-24).  Although Plaintiff claimed financial considerations as the reason for non-compliance, the ALJ did not find these reasons credible due to the fact she had been offered the opportunity to participate in an indigent medication program.  (Tr. 24).

The ALJ also evaluated Plaintiff's seizure disorder under Listing § 11.02.  The ALJ noted the treatment Plaintiff received for seizures, and recognized that Plaintiff refused to take the medication she was prescribed.  (Tr. 24).  The ALJ also noted that Plaintiff's seizures did not meet the relevant frequency requirements.  (Tr. 24-25).  Finally, the ALJ noted that the effects of Valium use are known to produce seizure activity.  (Tr. 24). Concerning Plaintiff's drug abuse, the ALJ noted the positive presence of benzodiazepines and THC in Plaintiff's urine drug screens.  (Tr. 23).  The ALJ noted that Plaintiff's drug seeking behavior for Valium is well documented, and that, in the absence of drug abuse, Plaintiff would not have a seizure disorder.  (Tr. 25).

The ALJ determined that Plaintiff did not suffer from a mental impairment that would limit her ability to work. (Tr. 25). After evaluation, Plaintiff refused treatment, including antidepressants, counseling, and stress management training.  (*Id.*).  The ALJ determined that Plaintiff's mental impairment did not meet the required symptoms.  (*Id.*).

The significant factor which the ALJ found was the presence of benzodiazepines and marijuana abuse. (Tr. 26). Plaintiff's "markedly" limited concentration and her reports of problems following spoken or written instructions were determined by the ALJ to be symptoms of Plaintiff's substance use disorder. (Tr. 27). The ALJ determined that Plaintiff is disabled secondary to her substance use disorder. (Tr. 28). The ALJ's final determination was that if Plaintiff stopped the substance abuse she would not have an impairment (or combination of impairments) that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 28). The ALJ concluded that if the substance abuse stopped Plaintiff would be able to perform past relevant work as a cashier. (Tr. 30).

### IV.     Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner, remanded for further consideration. (Doc. # 9). Plaintiff asserts that (1) the ALJ's finding that her seizures would cease if the substance use stopped was not medically supported, and (2) the ALJ erroneously assumed that Plaintiff would have received free or no cost medications.

### V.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383© mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the

Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI.     Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

### A.     The ALJ Properly Applied the Drug and Alcohol Abuse Standard

Though Plaintiff does not specifically argue that the ALJ erred in determining that she failed to meet her burden of proving that drug and alcohol abuse is not a contributing factor material to the disability determination, this finding is reviewed by the court because it is key to the ALJ's determination that Plaintiff is not disabled.

In the Contract with America Advancement Act of 1996, Congress amended the Social Security Act to provide that a claimant "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor

13

material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-21, § 105(a)(1), (b)(1), 110 Stat. 847, 852, 853 (codified as amended at 42 U.S.C. § 423(d)(2)(c) (1997)). The regulations implementing § 423(d)(2)(c) provide that once the Commissioner determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the Commissioner then "must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535. The most import factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability (the "materiality determination") is whether a claimant would still be found disabled if she stopped using drugs or alcohol. *See* 20 C.F.R. § 404.1535(b)(1).

As the ALJ's decision makes clear, the record is replete with evidence of Plaintiff's continuous substance use and drug seeking behavior. Plaintiff consistently abused drugs and fails to present sufficient proof that her substance abuse was not a contributing factor material to the determination of disability. Thus, the ALJ did not err in finding that Plaintiff did not carry her burden under *Doughty* of submitting relevant medical evidence to show otherwise. *Doughty*, 245 F.3d at 1280. The ALJ's finding that substance use abuse was a contributing factor material to Plaintiff's disability is supported by substantial evidence.

  **B. The ALJ's Finding That Plaintiff's Seizures Would Cease If the Substance Use Stopped Was Medically Supported.**

Plaintiff argues that the ALJ's conclusion that her seizures would cease if she did not abuse drugs is not supported by the evidence in the record. (Doc. #9). Plaintiff argues that the ALJ's decision that seizures are the side effect of Valium abuse is not supported. The ALJ cited to "seizure activity" as a well-known affect of Valium abuse and withdrawal. (Tr. 24). The ALJ stated that

14

Plaintiff's "seizure disorder is a manifestation of her underlying substance addiction disorder" because of her drug seeking behavior and the fact that she is not compliant with her prescribed anti-seizure medication. (Tr. 24-25). The court finds there is sufficient evidence in the record to support a finding of Plaintiff's drug seeking behavior and non-compliance with seizure medication. Furthermore, the ALJ found that Plaintiff did not meet the criteria of Listing 11.02,[3] and this finding was supported by substantial evidence. Again, the record is replete with references to Plaintiff's substance abuse, and Plaintiff's own statements that she is non-compliant in her medical treatment.

Although Plaintiff relies on *Salazar v. Barnhart*, 468 F.3d 615 (10th Cir. 2006) as requiring a report of a medical or psychological consultant to serve as the basis for a conclusion that drug and alcohol abuse are material to a determination that Plaintiff is not disabled, the Eleventh Circuit has stated that the Emergency Teletype (which is an internal Social Security Agency communication) does not impose any new requirement on the ALJ when making a materiality determination. *Doughty*, 245 F.3d at 1280 (recognizing that "[t]he regulations 'normally require' a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources."). The court finds *Doughty* is the controlling law and the ALJ correctly applied it in this case.

---

[3]Plaintiff has not been able to provide evidence of a documented, detailed description of a typical seizure pattern in spite of at least three months of prescribed treatment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.02. Plaintiff's own statements provide substantial evidence that she has not maintained three months of prescribed treatment. The medical evidence also does not show that Plaintiff's seizures occurred more frequently than once a month as required under § 11.02. Finally, not all of the seizures resulted in a loss of consciousness or convulsions. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.02A. Therefore, even if Plaintiff's seizures were not the result of her substance use abuse, she still failed to meet the § 11.02 Listing for disability.

The court also notes that in *Salazar* the Tenth Circuit was concerned that the ALJ did not reference the specific listing that contained mental impairments. *See Salazar*, 468 F.3d at 621. In this case the ALJ specifically deals with the mental impairments Plaintiff is diagnosed as having and addresses them under Listing 12.04 and 12.09. (Tr. 25-28). Specifically, the ALJ relied on the two psychological evaluations: Dr. Brian Murphy's report of May 24, 2004, and the Florida Parishes Human Services Authority Report dated January 3, 2005. (Tr. 25). Based on these reports the ALJ found that Plaintiff had a "moderate" limitation in her activities of daily living, a "marked" limitation of social functioning, and a "marked" limitation of concentration, persistence and pace. (Tr. 26-27). The final "B" criterion of § 12.09 is deterioration or decompensation in work or work-like settings. The ALJ found two episodes of decompensation in the record. (Tr. 27). The ALJ also found that the "C" criterion was not established in the record. (Tr. 27-28). The court finds that the ALJ considered the medical evidence and applied it to the required Listings found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Because the ALJ determined that Plaintiff was disabled secondary to the effects of her substance use disorder, the only question that remained was whether Plaintiff would continue to exhibit significant functional limitations from her non-substance abuse disorders. The ALJ found that if Plaintiff's substance use abuse stopped, she would have severe impairments of insulin dependent diabetes mellitus and morbid obesity. (Tr. 28). That finding is supported by substantial evidence.

> **C. The ALJ Did Not Erroneously Assume That Plaintiff Would Have Received Free or No Cost Medications, But Instead Found That Plaintiff Had Not Proven That Her Financial Condition Was the Reason for Non-compliance.**

The ALJ determined that, if Plaintiff stopped the substance abuse, her insulin dependent diabetes could be controlled with medical treatment, diet, and exercise. Plaintiff recognizes that a refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability. (Doc. #9; *citing* 20 C.F.R. § 416.930(b)); *see also Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988). However, Plaintiff argues that she is unable to afford the prescribed medication. Plaintiff argues that this inability to afford her medication relieves her of the obligation to follow the prescribed treatment. (Doc. #9).

The record is full of evidence demonstrating Plaintiff's non-compliance. On various and multiple occasions, Plaintiff left the emergency room before being treated, did not attend follow-up appointments, and did not take medication, even when she indicated that she had an abundance at home. (Tr. 181, 470-71, 474, 578-80, 621, 645). The ALJ also noted that Plaintiff was provided information on an indigent medication program. (Tr. 428). The record is silent as to whether Plaintiff attempted to utilize this or any other program in order to acquire her prescribed medication. Indeed, even Plaintiff concedes that there is no evidence regarding whether she attempted to utilize that program. (Doc. #9 at 15).

The ALJ relied on this, as well as other evidence in the record, in making a determination that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms were not credible.[4] (Tr. 29). The ALJ noted the report by Dr. Murphy which stated Plaintiff was coy

---

[4] Although not directly addressed in the ALJ's opinion, the court finds that substantial evidence that supports a determination that Plaintiff is not credible by the fact that she informed Dr. Anthon

and evasive. (Tr. 25, 441). Dr. Murphy also noted that Plaintiff was being disingenuous and fabricating symptoms. (Tr. 441). The ALJ stated a concern that Plaintiff's credibility was undermined by the inconsistency of her statements and the evidence, stating "consistency is lacking in the record." (Tr. 30). Credibility determinations are the duty of the Commissioner. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Here, the ALJ weighed the evidence and determined that Plaintiff's subjective complaints and credibility were in conflict with the medical records. There is substantial evidence in the record that supports the ALJ's clearly articulated credibility finding. *See Foote v. Chater*, 67 F.3d 1553, 1662 (11th Cir. 1995).

Based on all the evidence and considering the lack of Plaintiff's credibility, the ALJ determined that if Plaintiff stopped her substance use abuse, she could: lift and carry 10 pounds frequently and 20 pounds occasionally; push and pull within the above weight limits; stand and walk for at least six hours in an eight hour work day; sit for at least six hours in an eight hour work day; and meet the mental demands of unskilled to semi-skilled work activity. (Tr. 28-29). It was the ALJ's final determination that if Plaintiff stopped her substance use abuse she would be able to perform her past relevant work as a cashier. (Tr. 30). Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Act. Those findings are amply supported by substantial evidence in the record.

---

that she was in an automobile accident with an 18-wheeler on March 14, 2004 and was treated at the North Oaks emergency room. (Tr. 396). However, there are no records of treatment from North Oaks that reference an automobile accident on March 14, 2004. Plaintiff was seen in the North Oaks emergency room on May 2, 2004 alleging an automobile accident with an 18-wheeler. (Tr. 411). However, witnesses at the scene stated that there was no collision and Plaintiff stopped her car in the middle of the road and then called for an ambulance. (Tr. 411). This evidence was before the ALJ and the court simply notes that it further supports his credibility findings.

## VII. Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this       30th       day of March, 2009.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE